ORIGINAL

# In the United States Court of Federal Claims

No. 14-1022C (Pro Se)
(Filed Under Seal: September 25, 2017 | Reissued: October 24, 2017)*

JIMMI TYLER REBISH,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

Keywords: Settlement Agreement; Neutral Reference Provision; Breach of Contract; Damages; Causation; Motion to Compel; Summary Judgment; RCFC 56; Pro Se.

FILED
OCT 24 2017
U.S. COURT OF FEDERAL CLAIMS

*Jimmi Tyler Rebish*, Boise, ID, pro se.

*Agatha Koprowski*, Trial Attorney, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, Washington, DC, for Defendant, with whom were *Steven J. Gillingham*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Chad A. Readler*, Acting Assistant Attorney General. *Nanette Gonzales*, Attorney, U.S. Department of the Interior, Office of the Solicitor, Of Counsel.

**OPINION AND ORDER**

**KAPLAN, Judge.**

Pro se plaintiff Jimmi Tyler Rebish is a former employee of the Department of the Interior's Bureau of Reclamation (the Bureau). In 2008, the Bureau notified him that it intended to reassign him from its Idaho office to its Denver, Colorado office. Mr. Rebish invoked the agency's internal grievance procedure, claiming that the reassignment was proposed in retaliation for protected activity. The grievance process resulted in a settlement agreement which, among other things, contained neutral reference and confidentiality provisions.

According to Mr. Rebish, the Bureau breached its obligations under these provisions when certain Bureau employees allegedly provided third parties with negative information about him. He further claims that the Bureau has failed to respond to his requests that it investigate and

* This Opinion was originally issued under seal on September 25, 2017, and the parties were given the opportunity to request redactions. Neither party has done so. Although Mr. Rebish filed a "Notice Regarding Proposed Redactions," he merely "propose[d] that the government's motion for summary judgment [be] denied" and that "this entire matter be redacted and his original complaint reinstated." Accordingly, the Opinion is now reissued publicly in its original form.

address these alleged breaches. Mr. Rebish also complains about the Bureau's refusal to reinstitute the agency's mediation process to address his concerns. Finally, Mr. Rebish alleges that he has been unable to obtain employment since he left the Bureau and has suffered both pecuniary and non-pecuniary injuries as a result of the Bureau's actions.

Presently before the Court is Mr. Rebish's motion for summary judgment and for certain miscellaneous relief, as well as the government's motion for summary judgment. For the reasons set forth below, Mr. Rebish's motions are **DENIED** and the government's motion for summary judgment is **GRANTED.**

## BACKGROUND[1]

### I. Mr. Rebish's Employment with the Department of the Interior

Prior to the fall of 2008, Mr. Rebish was employed as a civil rights program specialist in the Bureau's Boise office. See 2d Am. Compl. ¶¶ 1, 3, 6, 14, Docket No. 53; see also Am. Pl.'s Mot. for Court Interv[]ention (Pl.'s Mot.) at 3–4, Docket No. 91; Def.'s Mot. for Summ. J. & Resp. in Opp'n to Pl.'s Am. Mot. for Miscellaneous Relief (Def.'s Mot.) at 3, Docket No. 92. On June 23, 2008, however, Brian Sutherland, the Acting Director of the Civil Rights Office, advised Mr. Rebish that the Bureau was reassigning him to a duty station in Denver, Colorado, effective August 3, 2008. Def.'s Reply in Supp. of Its Mot. for Summ. J. Suppl. App. (Def.'s Suppl. App.) at SA21, Docket No. 94; see also Pl.'s Mot. at 3–4. Mr. Sutherland notified Mr. Rebish that he had until "July 7, 2008, to accept or decline th[e] reassignment." Def.'s Suppl. App. at SA21. If he declined, Mr. Sutherland cautioned, he would be "subject to termination for failure to accept a directed reassignment." Id.

Because Mr. Rebish believed that the Bureau had proposed his transfer in retaliation for his involvement in another Bureau employee's Equal Employment Opportunity case, he invoked the Bureau's internal administrative grievance procedure. See, e.g., Pl.'s Mot. at 3–4; see also 2d Am. Compl. ¶ 6; Rebish v. Merit Sys. Prot. Bd., 601 F. App'x 944, 945 (Fed. Cir. 2015) (per curiam). Mr. Rebish and the Bureau initially entered into an agreement to settle the grievance on September 18, 2008. 2d Am. Compl. ¶ 22; Def.'s Mot. at 3. Thereafter, on October 23, 2008, Mr. Rebish and the Bureau entered a "Superseding Negotiated Settlement Agreement and General Release and Waiver." 2d Am. Compl. Ex. 1 at 1. This second, superseding agreement was signed by Mr. Rebish, his then-attorney, and two officials at the Bureau, Dean W. Teasdale and Joshua L. Klinger. Id. at 7.

In the October 2008 agreement, Mr. Rebish withdrew his grievance and released the Bureau from liability for "any and all formal or informal complaints and appeals, claims for emotional pain and suffering, any and all claims known or unknown, [and] appeals, charges, or grievances against the Agency . . . having arisen on or prior to the date of th[e] Agreement." Id. at 1. Mr. Rebish also agreed "not to file any EEO complaints, MSPB appeals, grievances, or

[1] The facts set forth in this section are based upon the materials submitted in connection with the cross-motions for summary judgment and other documents in the record. Except as noted, the facts are not in dispute.

court actions, or initiate any other administrative or judicial proceedings concerning any of the matters raised in . . . his federal court of appeals case or his EEO Complaint." Id. at 2.

In exchange, the Bureau agreed to: 1) provide Mr. Rebish with a monetary payment; 2) maintain Mr. Rebish in a paid status until October 17, 2008, after which his personnel file would reflect that he had "be[en] removed from the rol[l]s of the Bureau of Reclamation based on his declination of his directed reassignment"; 3) place Mr. Rebish on the Department of the Interior's "Reemployment Priority list for the local area," but not with respect to positions specifically with the Bureau; 4) expunge Mr. Rebish's official personnel file of all material related to his grievance; and 5) not place the agreement in Mr. Rebish's official personnel file. Id. at 2–3.

In addition, and as pertinent to the issues Mr. Rebish raises in this case, section 4(d) of the agreement provided that "[u]pon the effective date of th[e] agreement, [the Bureau would] provide [Mr. Rebish] with a neutral reference that will be given by Ms. Ellie Hasse or her identified successor." Id. at 3. The agreement further specified that the neutral reference Ms. Hasse would provide would only include the following information: "(1) current or past position(s) and title(s); (2) current or past grade(s); and (3) dates of employment." Id.

In addition, section 7 of the agreement contained safeguards against the disclosure of the terms of the agreement or its surrounding circumstances. It stated that both parties agreed "that the terms and conditions of th[e] Agreement . . . and the facts surrounding the settlement . . . are . . . confidential and are not to be discussed with anyone," except as required by law, as discussed by Mr. Rebish with immediate family, accountants, lawyers, or taxing authorities, or as required "for the limited purposes of implementing or enforcing the terms of the Agreement." Id. at 4–5.

## II. The Alleged Breaches

According to Mr. Rebish, in the years since he left the Bureau in 2008, he has applied for hundreds of jobs in both the public and private sectors, but has received no job offers. 2d Am. Compl. ¶¶ 9, 36–37; Pl.'s Mot. at 9.[2] Mr. Rebish did not provide Ms. Hasse's name as a reference in connection with any of these applications. Instead, he alleges that he listed as references "several individuals with whom he worked at the Bureau of Reclamation." 2d Am. Compl. ¶ 38. He claims that those individuals included Kerry Whitford, Ben Weinischke, Keith Kirkpatrick, Kathleen Stinson, Heidi Murphy, and Paul Rachetto. Id.[3]

---

[2] Mr. Rebish applied for a number of jobs for which he appears unqualified, including clinical pharmacist, nurse, and associate general counsel. See Def.'s Mot. App. at A83–115, Docket No. 92-1; id. at A47–48 (Mr. Rebish's deposition at 176–79) (acknowledging he lacks qualifications for these positions).

[3] Mr. Rachetto, Mr. Kirkpatrick, Ms. Stinson, and Mr. Weinischke were former coworkers of Mr. Rebish's at the Bureau. Id. at A28, A35–37 (Mr. Rebish's deposition at 101, 129, 133–34); 2d Am. Compl. ¶ 38. Ms. Whitford was also a coworker, and, according to Mr. Rebish, was at one time the acting director of the Bureau's Civil Rights Office. Def.'s Mot. App. at A44–45 (Mr.

Eventually, Mr. Rebish came to believe that the Bureau had violated the terms of the agreement "by publicly disclosing confidential information about his employment and circumstances of separation from the Bureau." Pl.'s Mot. at 8–9; see also 2d Am. Compl. ¶ 41. In addition to making generalized allegations about communications with unspecified "third parties," Mr. Rebish has asserted that his former co-workers disclosed negative information about him to Stacy Harshman, a career counselor whom Mr. Rebish engaged as part of his ongoing efforts to obtain employment. See Def.'s Mot. App. at A49–50 (Mr. Rebish's deposition at 184–87) (testifying that Ms. Harshman "caught [K]erry Whitford and Ben Weinischke breaching the agreement"); see also Pl.'s Mot. at 10 (asserting that "Kerry Whitford, Ben [Weinischke] and Karl Stock breached the settlement agreement by providing a negative reference to Stacy Harshman"); Pl.'s Cross Resp. to Def.'s Mot. (Pl.'s Cross Resp.) at 9–10, Docket No. 93. Similarly, he has claimed that in July 2013, Kerry Whitford, Brian Sutherland, and Kathleen Stinson each provided a "negative reference" about him to the Custer Agency, a private investigative firm that he had hired. See Def.'s Mot. App. at A50–51 (Mr. Rebish's deposition at 189–91); see also id. at A37 (Mr. Rebish's deposition at 137); Pl.'s Cross Resp. at 9–10.

Mr. Rebish claims that he contacted various individuals both within and outside the Bureau seeking an investigation of and redress for these alleged breaches. Pl.'s Mot. at 10–11; see also 2d Am. Compl. ¶¶ 41, 49–51, 76–80, 89–90, 92, 102. According to Mr. Rebish, no one he contacted addressed his concerns to his satisfaction. See, e.g., Pl.'s Mot. at 12.

## III. Mr. Rebish's Prior Efforts to Seek Legal Redress for the Alleged Breaches

In the meantime, in the fall of 2012, Mr. Rebish filed a complaint with the United States Office of Special Counsel (OSC), alleging that the Bureau "breached the Agreement and took adverse actions against him." 2d Am. Compl. ¶ 102. In March 2013, OSC concluded that there were "no reasonable grounds to believe that the [Bureau] provided negative references to [Mr. Rebish's] prospective employers because of [his] whistleblowing." Id. ¶ 105. Accordingly, in April 2013, OSC closed its inquiry into Mr. Rebish's complaint, finding that his claim of breach of the agreement was "not an unlawful personnel practice or action" and that it lacked jurisdiction over his complaints with respect to job applications for positions in the private sector. Id. ¶ 111.

Thereafter, Mr. Rebish filed two actions with the Merit Systems Protection Board (MSPB). Id. ¶ 114; see also Rebish, 601 F. App'x at 945. Both actions related to the settlement agreement; the first asserted that the Bureau provided non-neutral references "in reprisal for whistleblowing related to an equal employment opportunity investigation," while the second asserted that Mr. Rebish's resignation pursuant to the settlement agreement was involuntary. Rebish, 601 F. App'x at 945. The MSPB dismissed both cases for lack of jurisdiction. Id. Mr. Rebish then appealed to the Court of Appeals for the Federal Circuit, which affirmed the MSPB's decisions. Id. at 945–47. The court found that Mr. Rebish "failed to make a sufficient allegation that a disclosure he made contributed to the [Bureau's] decision to make the allegedly

---

Rebish's deposition at 163, 166). Ms. Murphy was a human resources officer in the Bureau's Denver office and eventually a designated successor to Ms. Hasse. Id. at A227.

unfavorable employment references at issue." Id. at 946. It also concluded that he failed to "make a non-frivolous allegation as to the involuntariness of his resignation," and noted that "[e]ven if there was a breach . . . it would not imply invalidity of the agreement or involuntariness in his resignation." Id. at 947.

## IV. This Action

On October 21, 2014, Mr. Rebish, acting pro se, filed a complaint in this court. Docket No. 1. In that complaint, he alleged that the Bureau had engaged in "six years of reprisal or retaliation, prohibited personnel practices, confidentiality breaches and breaches of privacy act notice." Compl. ¶ 2. He further claimed that as a result of these actions he had been unable to "regain employment," resulting in "financial hardship" as well as "pecuniary and non-pecuniary losses involving depression, embarrassment, humiliation, loss of professional standing and reputation, loss of enjoyment of life, adverse effect to physical health and marriage (divorce), real estate, [and] depleted retirement accounts." Id. ¶ 3.

The government moved to dismiss the complaint in part for lack of jurisdiction. See Rebish v. United States, 120 Fed. Cl. 184, 186 (2015). The Court granted the government's motion in part. Id. It held that it had jurisdiction over Mr. Rebish's claim that the Bureau had breached the agreement's neutral reference provision because that provision (as well as the related confidentiality provision) could fairly be interpreted as contemplating money damages in the event of a breach. Id. at 187–88. But the Court agreed with the government that it lacked jurisdiction over Mr. Rebish's allegations of breaches of the Privacy Act, his claims of reprisal and retaliation, and his claims of prohibited personnel practices. Id. at 188.[4]

Thereafter, on May 20, 2015, and with Mr. Rebish's permission, the Court referred his case to the court's Pro Bono/Attorney Referral Pilot Program. Order, Docket No. 16. Mr. Rebish apparently obtained some informal advice from a law firm through this referral, but did not secure counsel to represent him in this litigation. See Mot. for Enlargement of Time to Conduct Discovery at 1–2, Docket No. 19. The Court made a second referral at Mr. Rebish's request on November 18, 2015. Order, Docket No. 27. This referral resulted in an offer of representation and on January 12, 2016, an attorney entered an appearance on Mr. Rebish's behalf. Docket No. 28.

Mr. Rebish's attorney engaged in substantial work on his behalf in the ensuing months. In addition to propounding interrogatories and requests for the production of documents on the government, he assisted Mr. Rebish in responding to the government's discovery requests. He

[4] The Court declined to dismiss on jurisdictional grounds Mr. Rebish's claims for damages based on "depression, embarrassment, loss of professional standing and reputation, loss of enjoyment of life, and adverse effects on his physical health and marriage." Rebish, 120 Fed. Cl. at 188 n.1. The Court stated that while it was "very unlikely" Mr. Rebish could establish entitlement to such non-pecuniary damages, the Court would not dismiss them because it had jurisdiction over the underlying breach of contract claim. Id.

also filed an amended and then a second amended complaint on Mr. Rebish's behalf. Docket Nos. 48, 53.

The second amended complaint is the currently operative pleading. In it, Mr. Rebish alleges two causes of action: 1) breach of contract based upon a breach of the neutral reference and confidentiality provisions of the settlement agreement; and 2) breach of the implied covenant of good faith and fair dealing, based upon the Bureau's failure to disclose the agreement to its personnel as necessary to implement its terms, and on its failure to take appropriate corrective action to address the alleged breaches of the agreement. 2d Am. Compl. ¶¶ 151–94.

On July 25, 2016, while discovery was ongoing, Mr. Rebish's attorney moved to withdraw as his counsel. Docket No. 65. On August 1, 2016, the Court held a conference call on the motion in which both Mr. Rebish and his counsel participated. See Docket Nos. 68–69. It became apparent to the Court during this conference call that Mr. Rebish was not willing to heed or defer to the advice of his attorney regarding the handling of the litigation. Accordingly, and reluctantly, the Court granted counsel's motion to withdraw, effective August 30, 2016. Docket No. 69 at 1 (observing that Mr. Rebish's attorney had asserted a "breakdown in the relationship between himself and Mr. Rebish" and that "he and Mr. Rebish have had repeated disagreements about both the appropriate legal theories to be pursued in the case and the facts to be presented to the Court"); see also id. at 2 (finding that "Mr. Rebish [was] not willing to take [his attorney's] counsel regarding the proper presentation of his claims"). Since that time, Mr. Rebish has proceeded pro se, representing himself at his own deposition and through the completion of the discovery process, as well as in briefing the cross-motions for summary judgment.

On November 15, 2016, the Court issued a scheduling order in which it adopted the parties' proposed schedule for the completion of discovery by January 17, 2017, with briefing on cross-motions for summary judgment thereafter. Docket No. 84. During discovery, on November 28, 2016, Mr. Rebish filed a "Motion for Court Ordered Depositions or Equivalent Legal Relief & Motion to Compel Disclosure, Discovery & Ad[]missions Against Government," in which, among other things, Mr. Rebish sought an order compelling the government to pay for any depositions he wished to take. Docket No. 85. On December 1, 2016, the Court denied Mr. Rebish's motion, directing his attention to the court's rules for discovery and advising him that if he believed the government had wrongfully failed to disclose or respond to certain requests, he could file a motion to compel specifically identifying any such instances. Order, Docket No. 86. The Court also informed Mr. Rebish that it lacked the authority to order the government to pay for depositions Mr. Rebish wished to take. Id. at 2.

On February 3, 2017, Mr. Rebish filed another motion seeking various relief, which he titled a "motion for court interv[]ention to provide relief, compel discovery against govern[me]nt, hold government in contempt of court for obstruction of justice, have sanctions brought against government, partial or full summary judgment & injunction/restraini[n]g order against government." Docket No. 88. In light of the existing summary judgment briefing schedule, the Court construed this filing as a motion for summary judgment and for miscellaneous relief.

On February 9, 2017, Mr. Rebish filed a motion for "telephonic conference & to amend[] Plaintiff's motion for court interv[]ention to provide relief, compel discovery against

government, hold government in contempt of court for obstruction of justice, have sanctions brought against government, partial or full summary judgment & injunction/restraini[n]g order against government." Docket No. 89. On February 16, 2017, the Court granted Mr. Rebish's motion to amend, but denied his motion for a telephonic conference, Order, Docket No. 90, and his amended motion was docketed that same day, Docket No. 91.

The government filed its response and cross-motion for summary judgment on March 21, 2017. Docket No. 92. Mr. Rebish filed a response and reply on April 17, 2017, Docket No. 93, while the government filed its reply on May 3, 2017, Docket No. 94.[5]

## DISCUSSION

### I. Summary Judgment Standards

The standards for granting summary judgment are well established. Summary judgment may be granted where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Rule 56(a) of the Rules of the Court of Federal Claims (RCFC); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. An issue is genuine if it "may reasonably be resolved in favor of either party." Id. at 250.

"The moving party bears the burden of establishing the absence of any genuine issue of material fact," and all significant doubts regarding factual issues must be resolved in favor of the party opposing summary judgment. Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987). "[T]he party opposing summary judgment must show an evidentiary conflict on the record; mere denials or conclusory statements are not sufficient." Id. at 1390–91. "[E]ntry of summary judgment is appropriate against a [party] 'who fails to make a showing sufficient to establish the existence of an essential element to [its] case, and on which [it] will bear the burden of proof at trial.'" Zafer Taahhut Insaat ve Ticaret A.S. v. United States, 833 F.3d 1356, 1362–63 (Fed. Cir. 2016) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)) (third and fourth alterations in original).

### II. The Parties' Cross-Motions for Summary Judgment

"A settlement agreement is a contract" whose interpretation is a question of law. Harris v. Dep't of Veterans Affairs, 142 F.3d 1463, 1467 (Fed. Cir. 1998). To prevail on a breach of contract claim, a party must establish: 1) a valid contract between the parties; 2) an obligation or duty arising out of the contract; 3) a breach of that duty; and 4) damages caused by the breach. San Carlos Irrigation & Drainage Dist. v. United States, 877 F.2d 957, 959 (Fed. Cir. 1989). Further, as the court of appeals has observed, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." Metcalf Constr. Co. v.

---

[5] On August 14, 2017, Mr. Rebish filed a motion "demanding/requesting resolution, settlement, expedited processing and status." Docket No. 95. In light of this opinion, Mr. Rebish's motion is **DENIED** as moot.

United States, 742 F.3d 984, 990 (Fed. Cir. 2014) (quoting Restatement (Second) of Contracts ("Restatement") § 205 (Am. Law Inst. 1981)).

In this case, the government acknowledges the existence of a valid contract and agrees that certain obligations and duties arise out of that contract. However, it defines some of those duties differently than does Mr. Rebish, and argues that Mr. Rebish has presented no evidence that the government has, in fact, breached any of its duties under the contract. Thus, according to the government, even if the Court assumes that Mr. Rebish's co-workers provided negative information about him to third parties, it would not establish that the Bureau breached its obligations under the agreement's neutral reference provision. Further, the government argues that Mr. Rebish has introduced no evidence to support his allegations that the Bureau breached the agreement's confidentiality provision. And, it argues that none of Mr. Rebish's allegations breach the agreement's implied duty of good faith and fair dealing.

Finally, and in any event, the government asserts that even if Mr. Rebish could demonstrate a breach of some duty under the contract, the government would remain entitled to summary judgment because Mr. Rebish failed to produce any evidence linking such a breach to the injury he alleges: his inability to secure employment.

For the reasons set forth below, the Court agrees with the government. It therefore concludes that the government is entitled to summary judgment as to all of Mr. Rebish's claims. Finally, to the extent that what Mr. Rebish seeks here is reinstatement and a reopening of the agency grievance procedure, this Court lacks authority to grant such relief.

### A. Breach of Contract

#### 1. Neutral Reference Provision

As pertinent to the parties' dispute, the settlement agreement states that "the Bureau of Reclamation agrees to . . . provide Grievant with a neutral reference that will be given by Ms. Ellie Hasse or her identified successor." 2d Am. Compl. Ex. 1 at 2–3. It also provides that "Ms. Hasse will only provide the following information in regard to any reference check: (1) current or past position(s) and title(s); (2) current or past grade(s); and (3) dates of employment." Id. at 3.

Mr. Rebish claims that this provision required the Bureau to affirmatively prevent employees other than Ms. Hasse or her identified successor from providing references concerning Mr. Rebish, even where, as in this case, Mr. Rebish directed third parties to other Bureau employees for that purpose. Further, Mr. Rebish argues that—although he had no obligation to direct prospective employers to Ms. Hasse (and in fact was free to direct them to others)—the agreement obligated the Bureau to put mechanisms in place to prevent other Bureau employees from providing a reference concerning Mr. Rebish.

The government, on the other hand, contends that the neutrality provision does not require the Bureau to actively prevent Bureau employees whom Mr. Rebish has identified as references from providing such references. Instead, according to the government, the provision obligates the Bureau only to make Ms. Hasse or her designated successor available to provide a neutral reference on the agency's behalf, should a prospective employer seek the Bureau's views

about Mr. Rebish's tenure. See Def.'s Mot. at 12–13. According to the government, Mr. Rebish chose not to avail himself of his contractual right; instead, he directed third parties to his former co-workers at the Bureau to provide references in their personal capacities. The Court agrees with the government.

The interpretation of a contract begins with its plain language. Jowett, Inc. v. United States, 234 F.3d 1365, 1368 (Fed. Cir. 2000) (citing McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996)). Where the language is unambiguous, it must be given its plain and ordinary meaning. McAbee Constr., Inc., 97 F.3d at 1435 (citing Alaska Lumber & Pulp Co. v. Madigan, 2 F.3d 389, 392 (Fed. Cir. 1993)).

Here, the plain language of the neutral reference provision imposes on the Bureau only a single obligation: to "provide Grievant with a neutral reference that will be given by Ms. Ellie Hasse or her identified successor." 2d Am. Compl. Ex. 1 at 3. Unlike other agreements containing neutral reference or similar provisions, the agreement between Mr. Rebish and the Bureau includes no language that obligates the Bureau to ensure that its employees generally refer inquiries from third parties to Ms. Hasse or her designee. See America v. Preston, 468 F. Supp. 2d 118, 123 (D.D.C. 2006) (settlement agreement stating that "all inquiries from prospective employers received by OFA shall be referred to and handled by the Agency's Office of Human Resources" (emphasis omitted)). Nor does it include language prohibiting Bureau employees generally from providing references in their personal capacities and not on behalf of the Bureau. See Thomas v. Dep't of Hous. & Urban Dev., 124 F.3d 1439, 1440 (Fed. Cir. 1997) (settlement agreement providing that "no information will be provided by any [HUD] employee or official to any other person concerning this agreement or the reasons for [the employee's] departure from HUD, or other adverse action, performance rating, or the terms of the settlement" (first alteration in original) (emphasis added)).

Indeed, it appears that Mr. Rebish himself did not view the agreement as precluding Bureau employees generally from responding to requests for references, or as requiring them to direct inquiries to Ms. Hasse. Thus, he admits that he specifically directed third parties to other individuals at the Bureau for purposes of securing what he expected would be positive references provided in their personal capacities. See, e.g., Def.'s Mot. App. at A34 (Mr. Rebish's deposition at 122–23). His argument therefore seems to be that the neutrality provision obligated the Bureau to take steps to prevent its employees from giving negative references while leaving them free to provide positive ones, and coordinately that unless Bureau employees intended to give him a positive reference, they were required to redirect those third parties to Ms. Hasse for a neutral reference. See id.; see also id. at A43–44 (Mr. Rebish's deposition at 161–62). This is clearly not a workable arrangement, much less a reasonable reading of the language of the neutral reference provision.

Further, it is well-established that a contract should be read as a whole such that all of its provisions have meaning and make sense. See Jowett, Inc., 234 F.3d at 1368. In this case, the government's reading of the Bureau's obligations is consistent with the agreement as a whole, while Mr. Rebish's interpretation is not. Thus, only the government's interpretation of the neutral reference provision is consistent with the agreement's confidentiality provision, which is intended to limit the parties to whom the terms of the settlement and its surrounding circumstances may be disclosed. If the Bureau was obligated to prevent any and all of its

employees from providing third parties with information about Mr. Rebish's tenure at the agency, then it would necessarily be required to reveal to all of its employees one of the terms of the settlement—the neutrality provision. And doing so would suggest to all employees that Mr. Rebish left the agency under a cloud, an implication that actually undermines the ostensible purpose of the neutral reference requirement. Cf. Holmes v. Dep't of Veterans Affairs, 58 F.3d 628, 634 (Fed. Cir. 1995) (Plager, J., concurring) (observing that a neutral employment reference is problematic because it sends a "subtle signal . . . that there is some undisclosed problem").

Finally, the government's interpretation of the neutral reference provision better addresses the Federal Circuit's often-expressed concern about the problematic character of such provisions, which has led it to admonish that such provisions should be construed "strictly according to their terms." Godwin v. Dep't of Def., 228 F.3d 1332, 1336, 1338 (Fed. Cir. 2000); Pagan v. Dep't of Veterans Affairs, 170 F.3d 1368, 1372 (Fed. Cir. 1999); Thomas, 124 F.3d at 1442; Holmes, 58 F.3d at 633 n.5. As the court of appeals has noted, it may be "virtually impossible for agencies to ensure that settlement agreements [that] require[e] the whitewashing of an employee's disciplinary record[] can be performed to the letter," because "[e]ven if some agency officials are willing" to provide a neutral reference, "there is always the risk that another person who knows the facts will not remain silent."[6] Thomas, 124 F.3d at 1442.

To be clear, the Court recognizes that—irrespective of the concerns the Federal Circuit has outlined—the government will not be relieved of express provisions that require employees to channel reference requests to a single individual and/or express prohibitions against other employees providing references to third parties. See Greenhill, 92 Fed. Cl. at 393 (observing that "[t]o the extent that the Government chooses to enter into such an agreement . . . the court will not 'condone what would be essentially an empty promise made by the government' by finding an agency not responsible for a 'leak . . . directly from a responsible official inside the agency in response to an inevitable inquiry from a potential employer'" (quoting Thomas, 124 F.3d at 1442)). But absent express language and given the Federal Circuit's admonitions, the Court is reluctant to find that the government has made the difficult-if-not-impossible-to-honor promises Mr. Rebish's interpretation of the agreement would require. It is particularly reluctant to do so where, as here, the language of the agreement is more reasonably read to impose a narrower obligation.

For these reasons, the Court rejects Mr. Rebish's interpretation of the neutral reference provision. It finds that the provision obligated the Bureau to provide him with a neutral reference through Ms. Hasse or her identified successor, but did not impose an obligation on the Bureau to affirmatively prevent its employees from providing references (whether positive, negative, or neutral) in their personal capacities. Mr. Rebish has failed to come forward with any evidence demonstrating a breach of the neutral reference provision, properly construed. Accordingly, the government is entitled to judgment as a matter of law regarding this claim.

---

[6] The existence of this risk means that such a provision may also mislead an employee "'into believing he is getting something he is not,' namely the absence of any indications of problems in his prior employment." Greenhill v. United States, 92 Fed. Cl. 385, 392–93 (2010) (quoting Holmes, 58 F.3d at 634 (Plager, J., concurring)).

**2. Confidentiality Provision**

As described above, in section 7 of the agreement, the parties agreed that the terms of the agreement and the facts surrounding it would be kept confidential and would not be disclosed except under limited circumstances. Mr. Rebish has asserted that certain co-workers allegedly disclosed information required to be kept confidential to third parties in violation of this provision. The government, however, contends that Mr. Rebish "has not identified a single piece of evidence to demonstrate that [the Bureau] disclosed confidential information to anyone," and thus that it is entitled to summary judgment on this claim. See Def.'s Mot. at 15.

"In response to a summary judgment motion" a plaintiff cannot rely upon "mere allegations, but must set forth by affidavit or other evidence specific facts" supporting his claims. Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992) (quotations omitted). As a pro se plaintiff, Mr. Rebish is given greater leeway, and the Court construes his pleadings and motion papers liberally. But "a pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (Sotomayor, J.) (quoting Carey v. Crescenzi, 923 F.2d 13, 21 (2d Cir. 1991)); see also Veloz v. New York, 339 F. Supp. 2d 505, 513 (S.D.N.Y. 2004), aff'd, 178 F. App'x 39 (2d Cir. 2006) (pro se status does not relieve party of the burden of supplying the evidence that is required to defeat a summary judgment motion).

Based on the record before it, the Court concludes that Mr. Rebish's claim cannot survive the government's summary judgment motion because it is based almost entirely on his own speculation. Thus, Mr. Rebish did not depose the co-workers alleged to have made the improper disclosures or provide the Court with declarations from the third parties he claims received such disclosures. Indeed, he did not supply any evidence at all in opposing the government's motion for summary judgment.

Because Mr. Rebish is a pro se plaintiff, the Court has also taken into consideration parts of the record that Mr. Rebish did not submit in opposition to the government's motion. Thus, attached to Mr. Rebish's original pro se complaint are what appear to be notes on Custer Agency letterhead that memorialize a phone call between a Wendy Alexander and Kerry Whitford. 2d Attach. to Compl. The notes, however, do not provide evidence of a disclosure of the "terms and conditions of th[e] Agreement . . . and the facts surrounding the settlement." In fact, the notes suggest that Ms. Whitford may have been unaware of the existence of the settlement agreement. See id. (presumably relying upon conversation with Ms. Whitford, and noting that "at some point the job was located to Denver and [Mr. Rebish] had a choice to move" and that "[s]he felt [Mr. Rebish] left due to the fact that the job was not well defined and that he felt held back").

Mr. Rebish also attached to his pro se complaint handwritten notations on questionnaires that apparently were used as guides in conducting phone calls with Ben Weinischke, Kerry Whitford, and Karl Stock. 3d Attach. to Compl. In interrogatory responses, Mr. Rebish stated that he believed these documents were notes of conversations between Bureau employees and the Custer Agency and Ms. Harshman in which certain Bureau employees breached the confidentiality provision in some unspecified way. Def.'s Mot. App. at A140–44. But the notes themselves are unsigned and unlabeled, and the notations consist of cryptic sentence fragments. The Court does not consider this "evidence" competent to support Mr. Rebish's assertions that

Mr. Weinischke, Ms. Whitford, or Mr. Stock made unauthorized disclosures of the terms or circumstances of the settlement agreement.

In short, Mr. Rebish's bald assertions that Bureau employees disclosed the terms or the circumstances of his settlement agreement to third parties are not supported by any specific facts in the record. Accordingly, the government is entitled to judgment as a matter of law as to Mr. Rebish's claim that the Bureau violated section 7 of the agreement.

### 3. Duty of Good Faith and Fair Dealing

As noted above, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." Metcalf Constr. Co., 742 F.3d at 990 (quoting Restatement § 205); see also id. at 991 (observing that "[t]he covenant of good faith and fair dealing . . . imposes obligations on both contracting parties that include the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract" (quoting Centex Corp. v. United States, 395 F.3d 1283, 1304 (Fed. Cir. 2005)) (emphases and omission in original)). "Failure to fulfill that duty constitutes a breach of contract, as does failure to fulfill a duty 'imposed by a promise stated in the agreement.'" Id. at 990 (quoting Restatement § 235). These principles apply to contracts with the federal government. Id. (citing Precision Pine & Timber, Inc. v. United States, 596 F.3d 817, 828 (Fed. Cir. 2010) and Malone v. United States, 849 F.2d 1441, 1445–46 (Fed. Cir. 1988)).

"What is promised or disclaimed in a contract helps define what constitutes 'lack of diligence and interference with or failure to cooperate in the other party's performance.'" Id. at 991 (quoting Malone, 849 F.2d at 1445). Thus, the "implied duty of good faith and fair dealing cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions." Id. (quoting Precision Pine & Timber, Inc., 596 F.3d at 831).

Mr. Rebish argues that the Bureau violated its duty of good faith and fair dealing in several respects. First, he contends that the Bureau had a good faith obligation to notify its employees of the neutrality provision in order to ensure their compliance with it. As the Court has concluded, however, the neutrality provision does not obligate employees of the Bureau generally not to respond to reference requests. It would therefore not be reasonable or appropriate, particularly in light of the confidentiality provision, to infer a good faith duty on the part of the Bureau to inform all its employees of the neutral reference provision's requirements.

Mr. Rebish's second argument based on the duty of good faith and fair dealing is that the Bureau was implicitly bound to investigate and address his allegations of breach. He grounds this duty in the government's "obligation under [section] 7 to implement and enforce the Agreement." 2d Am. Compl. ¶ 182. But Mr. Rebish has taken the terms "implement and enforce" out of context: as discussed, those terms are part of the agreement's confidentiality provision, which allows the government to disclose the terms of the agreement "for the limited

purposes of implementing or enforcing" them. See id. Ex. 1 at 7. That section thus cannot be read to imply a freestanding duty to investigate and resolve alleged breaches.[7]

For these reasons, the Court rejects Mr. Rebish's argument that the Bureau had a good faith obligation to put in place mechanisms to ensure that employees generally did not respond to requests for references about Mr. Rebish. It also finds that the Bureau did not have a good faith obligation to investigate Mr. Rebish's complaints concerning the Bureau's compliance with the agreement. Mr. Rebish's claim based on the duty of good faith and fair dealing thus lacks merit.

* * * * * * * * * * * * *

In summary, for the reasons discussed above, Mr. Rebish has not demonstrated an essential element of his breach-of-contract claims—the breach of an obligation arising out of the agreement—and the government is therefore entitled to judgment as a matter of law as to Counts I and II of the complaint.

### B. Causation of Damages

In any event, the government is entitled to summary judgment as to all of Mr. Rebish's contract claims because he has failed to produce any evidence that his inability to secure employment was causally related to any disclosure of information by the Bureau to a prospective employer. In fact, he does not explicitly allege that he was excluded from consideration for any specific position as a result of a negative reference from a Bureau employee. Instead he alleges more generally and in conclusory fashion (based upon "information and belief") that the alleged disclosures of information about him to unspecified third parties "negatively impacted," "adversely affected," or "compromised" his ability to secure employment in the federal, public, and private sectors. 2d Am. Compl. ¶¶ 11, 43–44, 70, 104, 130, 144, 146–47, 169, 170, 193.

To make the non-breaching party whole, it is entitled to recover its reasonably foreseeable expectation damages for breach of contract, but only where such damages "are caused by the breach of the promisor." Bluebonnet Sav. Bank, F.S.B. v. United States, 266 F.3d 1348, 1355 (Fed. Cir. 2001) (citing Restatement §§ 347, 351, 352). To meet the causation requirement, a plaintiff must show "that the damages would not have occurred but for the breach." Fifth Third Bank v. United States, 518 F.3d 1368, 1374 (Fed. Cir. 2008). Alternatively, the Federal Circuit has held that the court may use a "substantial factor" test in determining causation with respect to damages. See Citizens Fed. Bank v. United States, 474 F.3d 1314, 1318 (Fed. Cir. 2007). The choice of which test to use is within the trial court's discretion, and "depends upon the facts of the particular case." Id.

As noted, in his complaint, Mr. Rebish alleges that the Bureau's breaches of the neutral reference and confidentiality provisions and of its implied obligations have affected his ability to secure a new job, resulting in "significant personal and financial hardships." See, e.g., 2d Am.

---

[7] The Court does not address the question of whether there is a genuine issue of material fact as to whether—assuming the Bureau had a duty to investigate Mr. Rebish's complaints—it failed to discharge that obligation.

Compl. ¶¶ 169–73; see also Pl.'s Mot. at 53–54; Tr. of Proceedings at 15, Rebish v. United States, No. 14-1022C (Fed. Cl. Oct. 19, 2015), Docket No. 43 ("THE COURT: Mr. Rebish, am I correct that your argument in the case is that the Bureau . . . gave you bad references, and that's why you haven't been able to get a job? . . . MR. REBISH: Yes. Yeah."). Thus, to establish the requisite causal link between the breaches and the alleged financial injuries, Mr. Rebish would ultimately be required to prove: 1) that Bureau employees provided non-neutral references to prospective employers; and 2) that those non-neutral references were at least a substantial factor in the employers' decisions not to hire Mr. Rebish. Mr. Rebish, however, has failed to produce any evidence that the Bureau gave any prospective employer a non-neutral reference, much less that any such reference played a substantial part (indeed, any part) in his failure to secure any of the hundreds of jobs for which he alleges he applied. In fact, in his responses to the government's interrogatories, Mr. Rebish stated that he "lack[ed] information about the specific entity or entities that received a less than neutral reference" about him. Def.'s Mot. App. at A145 (internal quotation and alteration omitted).[8]

Notwithstanding his responses to interrogatories, Mr. Rebish asserts that the Bureau provided "information about Mr. Rebish that was deemed confidential under the Agreement" to the Bureau of Land Management after it had interviewed him. Pl.'s Mot. at 24. According to Mr. Rebish, this information "influenced the agency's consideration of Mr. Rebish" and led to him not receiving an offer of employment. Id. But, as noted, Mr. Rebish's assertion is not evidence. See Precision Pine & Timber, Inc. v. United States, 62 Fed. Cl. 635, 646 (2004) ("Unsupported assertions or conclusory allegations are insufficient to withstand summary judgment." (citing SRI Int'l v. Matsushita Elec. Corp., 775 F.2d 1107, 1116 (Fed. Cir. 1985))); see also Yufa v. TSI, Inc., 652 F. App'x 939, 946, 948 (Fed. Cir. 2016); On-Line Tech. v. Bodenseewerk Perkin-Elmer, 386 F.3d 1133, 1141–42, 1144 (Fed. Cir. 2004); Jechura v. United States, 9 Cl. Ct. 753, 754 (1986). Further, the government has supplied a declaration from Carol Salo, an employee of the Bureau of Land Management who was involved in the hiring process for the position for which Mr. Rebish applied. See Def.'s Mot. App. at A200. In that declaration, she states that Mr. Rebish's references were never contacted as part of the application process. Id. at A200–01.

Similarly, in his reply brief, Mr. Rebish stated that Brian Sutherland provided a negative reference about him to the Small Business Administration. Pl.'s Cross Resp. at 9. But Mr. Rebish's claim is based on a mischaracterization of an email from Mr. Sutherland to another Bureau employee, Dean W. Teasdale. In the December 23, 2011 email, which the government produced in discovery and has introduced into the record, Mr. Sutherland states that he received a call about Mr. Rebish in 2008 from someone at the Small Business Administration in Boise. Def.'s Suppl. App. at SA1. In the email, Mr. Sutherland stated that he "informed the call[er] that [he] would have to transfer the call to the HR Manager for response." Id. He further stated that he "provided [the caller] with Ellie [Hasse]'s name and number and then transferred him to her." Id.

[8] Even assuming that Mr. Rebish had produced competent evidence that Bureau employees provided negative information about him to Ms. Harshman or to the Custer Agency, neither was a prospective employer. Pl.'s Mot. at 10; Def.'s Mot. App. at A37–38 (Mr. Rebish's deposition at 137–38); id. at A49–51 (Mr. Rebish's deposition at 184–91); id. at A195–96.

In short, other than this one instance, Mr. Rebish has failed to produce any evidence that any employer to whom he applied for a job even requested a reference about him from the Bureau. Nor has he produced any evidence that he was eliminated from consideration for a position as a result of such a reference. Accordingly, even assuming the actions about which he complains constituted breaches of the agreement, Mr. Rebish has failed to present any evidence of a causal link between any of those breaches and the financial injury he has alleged. For this reason as well, and because he would bear the burden of establishing causation at trial, the government is entitled to summary judgment as to his breach of contract claims.[9]

### C. Mr. Rebish's Request for Reinstatement and Reopening of the Grievance Process

Finally, the Court notes that one of Mr. Rebish's primary goals in this litigation appears to be securing an order from the Court setting aside the agreement, requiring the Bureau to reinstate him, and directing the Bureau to reopen the administrative grievance process. See Pl.'s Mot. at 16 (observing that he "does not need the courts or DOJ to enforce his settlement agreement and receive damages and or resolution," but that he "has rights and recourse through the Department of the Interior[']s CADR office"); id. at 7, 24 (alleging that he "suffered adverse federal employment determinations" and that his administrative grievance proceeding "should be reinstated for processing from the date it ceased"). As Mr. Rebish testified during his deposition,

---

[9] Further, to the extent Mr. Rebish alleges that the Bureau's purported breaches caused him non-pecuniary injuries such as humiliation, depression, or embarrassment, it is a general rule of contract law that "no damages will be awarded for the mental distress or emotional trauma that may be caused by a breach of contract." Bohac v. Dep't of Agric., 239 F.3d 1334, 1340 (Fed. Cir. 2001) (quoting John D. Calamari & Joseph M. Perillo, The Law of Contracts § 14.5(b) at 549 (4th ed. 1998)). Recovery is generally limited to pecuniary damages because contract damages are based on foreseeability at the time of contract execution. See Rebish, 120 Fed. Cl. at 188 n.1 (citing Bohac, 239 F.3d at 1340). Damages based on mental distress or emotional trauma are limited to narrow contexts in which such distress or trauma is reasonably foreseeable in the event of a breach, such as with "contracts of carriers and innkeepers with passengers and guests, contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death." Bohac, 239 F.3d at 1340 (citing Restatement § 353 cmt. a and 5 Arthur L. Corbin, Corbin on Contracts § 1076 (1964)). "Moreover, with the limited exception of contracts for the delivery of messages concerning death, damages for mental suffering are usually refused absent wanton and willful misconduct." Id. Emotional distress is generally not a reasonably foreseeable result of the breach of an employment settlement agreement. See id. at 1341 (observing that only traditional contract damages are recoverable for whistleblowing claims and claims for wrongful discharge); see also Jensen v. W. Jordan City, No. 2:12-CV-736-DAK, 2016 WL 4256946, at *9 (D. Utah Aug. 11, 2016) (finding emotional distress damages not "explicitly within the contemplation of the parties at the time [of] the Settlement Agreement"); Dobyns v. United States, 118 Fed. Cl. 289, 324–25 (2014) (observing that the Restatement supports recovery for emotional disturbance where "the contract's express intent is either to enhance or to protect a plaintiff's mental state" (internal quotation omitted)); Mastrolia v. United States, 91 Fed. Cl. 369, 381 (2010) (dismissing claim for damages for emotional distress from breach of employment settlement agreement).

it has been his understanding that if he could prove a breach of contract, then the Bureau would "go back to the date [the internal proceedings] ceased in 2008 and reopen [them] for processing, investigate, mitigate or whatever is going on, resolve and provide relief." Def.'s Mot. App. at A53–54 (Mr. Rebish's deposition at 201–02); see also id. at A68 (Mr. Rebish's deposition at 261) (stating his belief that because this Court "granted [him] jurisdiction under the breaches," the "800 or 1,000 jobs [he] applied to" "drive[] the case," but that, in his view, the case was "never about [them]"); id. at A69 (Mr. Rebish's deposition at 262) (explaining his view that because of the alleged breaches, he "can . . . go . . . back to the beginning . . . [and] have [the Bureau] reopen [his] original administrative grievance clear back to the date [he] got reassigned," and that the Bureau "should actually have to put [him] back in [his] old job at Reclamation and not make [him] move to Denver").

As this Court held in ruling on the government's motion to dismiss, however, it does not have jurisdiction to review the merits of the reassignment action that served as the basis for the grievance that Mr. Rebish filed and that the parties subsequently settled. Rebish, 120 Fed. Cl. at 188 (citing Worthington v. United States, 168 F.3d 24, 26–27 (Fed. Cir. 1999)). Further, even if the Court agreed with Mr. Rebish that the Bureau had breached the agreement, it would not be able to grant him the relief in which he appears to be primarily interested—an order compelling the Bureau to reopen his grievance and negotiate a new settlement agreement—because this Court lacks jurisdiction to order equitable relief except as ancillary to monetary relief. See Outlaw v. United States, 116 Fed. Cl. 656, 662 (2014); Taylor v. United States, 73 Fed. Cl. 532, 545–46 & n.25 (2006) (noting that the court "cannot award an equitable remedy in the absence of a viable claim for money damages" and that a request "that the court reinstate [a] Title VII discrimination claim[]" is "relief . . . beyond the court's jurisdiction"). In short, irrespective of whether the Bureau did or did not breach the agreement, this Court lacks the authority to grant Mr. Rebish the equitable relief he seeks.

* * * * * * * * * * * * *

As set out above, there is no genuine dispute of material fact as to the claims asserted in the second amended complaint, and the government has thus demonstrated that it is entitled to judgment as a matter of law on those claims. Therefore, Mr. Rebish's motion for summary judgment is **DENIED** and the government's motion for summary judgment is **GRANTED**.

## III. Mr. Rebish's Motion for Miscellaneous Relief

In his motion papers, Mr. Rebish has requested relief related to the discovery process. Specifically, he asks the Court to "compel discovery against the government, hold the government in contempt of court for obstructing justice, [and] have sanctions brought against the government." Pl.'s Mot. at 1. Mr. Rebish further states that the government should "provide what Mr. Rebish asked for in interrogatories, production of documents and respond appropriately to requests for admissions," and claims that "[t]he government has something that they are not giving Mr. Rebish." Id. at 18; see also Pl.'s Cross Resp. at 15 (asserting that he "has sent numerous Interrogatories, Requests for Production of documents and Request for admissions," but "is extremely concerned about what . . . the Government . . . ha[s] not provided" (emphasis omitted)).

As the Court previously informed Mr. Rebish, a motion to compel must "specifically identif[y] which information he alleges the government has wrongfully failed to disclose." Order at 2, Docket No. 86. Mr. Rebish does not identify the specific requests for admissions or interrogatories the government has improperly refused to answer or what documents it has wrongly refused to furnish to him. He also did not include with his motion the certification required by RCFC 37, stating that he "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." RCFC 37(a)(1). And though his reply brief contains a sentence that mimics the language of the rule, "[g]ood faith cannot be shown merely through perfunctory parroting of statutory language" but "mandates a genuine attempt to resolve the discovery dispute." Anaheim Gardens v. United States, No. 93-655C, 2008 WL 2043242, at *3 (Fed. Cl. Feb. 29, 2008) (quotation omitted). In this case, Mr. Rebish's briefs provide no basis upon which the Court can ascertain precisely what the discovery dispute is, much less the steps that he has taken to attempt to resolve it with the government. Accordingly, Mr. Rebish's motion for miscellaneous discovery relief is **DENIED**.

Mr. Rebish's additional requests for sanctions fail for similar reasons. RCFC 37(b) provides for sanctions when a party fails to comply with a court order regarding discovery. The Court has not issued any discovery orders in this case and therefore RCFC 37(b) is inapplicable. Rules 37(c) and (d) relate to sanctions for failing to appropriately respond to certain discovery requests, but Mr. Rebish has not specifically identified any alleged failings. Rather, he merely makes conclusory assertions that the government has not satisfied his discovery demands. Such assertions are not sufficient to impose sanctions under RCFC 37. Further, to the extent the government responded to Mr. Rebish's discovery requests with objections, with which Mr. Rebish now takes issue, sanctions are not available under RCFC 37(d). Badalamenti v. Dunham's, Inc., 896 F.2d 1359, 1362 (Fed. Cir. 1990). Accordingly, for these reasons, Mr. Rebish's miscellaneous requests for relief are **DENIED**.

**CONCLUSION**

For the reasons set forth above, Mr. Rebish's motion for summary judgment is **DENIED**, as are all his other pending motions. The government's motion for summary judgment is **GRANTED**. The Clerk shall enter judgment accordingly. Each side shall bear its own costs.

**IT IS SO ORDERED.**

ELAINE D. KAPLAN
Judge